# STATE OF TENNESSEE
## SUMMONS

## IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE

The Lampo Group, LLC d/b/a Ramsey Solutions
**Plaintiff**

**Plaintiff**
vs.
Kevin Helmut Paffrath,
**Defendant**
Paffrath Organization and
**Defendant**
MeetNDone Corporation
**Defendant**

**CIVIL ACTION NO.** 47877W

**Service By:**
☐ Sheriff
☒ Attorney
☐ Sec. Of State
☐ Comm. Of Insurance

**To the above named Defendant:** Paffrath Organization c/o Kevin Paffrath, Reg. Agent
8219 Quartz Street,
Ventura, California 93004

You are hereby summoned and required to serve upon __R. Brandon Bundren__
plaintiff's attorney, whose address is __1600 Division Street, Suite 700, Nashville, TN 37203__
_____, an answer to the complaint which is herewith served
upon you within thirty (30) days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be
taken against you for the relief demanded in the complaint.

Witnessed and issued, Elaine B. Beeler, Clerk and Master for said Court at
office this 4 day of Dec, 2018.

_____
Clerk & Master

### NOTICE:

**To the defendant(s):** Tennessee law provides a ten thousand dollar ($10,000.00)
personal property exemption from execution or seizure to satisfy a judgment. If a
judgment should be entered against you in this action and you wish to claim
property as exempt, you must file a written list, under oath, of the terms you wish
to claim as exempt with the clerk of the court. The list may be filed at any time
and may be changed by you thereafter as necessary; however, unless it is filed
before the judgment becomes final, it will not be effective as to any execution or
garnishment issued prior to the filing of the list. Certain items are automatically
exempt by law and do not need to be listed; these include items of necessary
wearing apparel (clothing) for yourself and your family and trunks or other
receptacles necessary to contain such apparel, family portraits, the family Bible,
and school books. Should any of these items be seized, you would have the right
to recover them. If you do not understand your exemption right or how to
exercise it, you may wish to seek the counsel of a lawyer. Mail list, including
docket number, to: Clerk and Master, P.O.Box 1666, Franklin, TN 37065.

DEFT./WITNESS COPY

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

Check *one*: (1) or (2) are for the return of an authorized officer or attorney; an attorney's return must be sworn to; (3) is for the witness who will acknowledge service and requires the witness's signature.

☐ 1. I certify that on the date indicated below I served a copy of this summons on the witness stated above by _____

☐ 2. I failed to serve a copy of this summons on the witness because _____

☐ 3. I acknowledge being served with this summons on the date indicated below:

DATE OF SERVICE: _____

SIGNATURE OF WITNESS, OFFICER OR ATTORNEY: _____
ADDRESS OF PROCESS SERVER (TRCP 4.01) _____
Signature of Notary Public or Deputy Clerk: _____

Commission Expires: _____

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case no. _____ to the defendant _____, on the _____ day of _____, 20_____.
I received the return receipt, which had been signed by _____
on the _____ day of _____, 20_____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk and Master.

_____          _____
Signature                                    Address (TRCP 4.01)

Sworn to and subscribed before me on this __ day of _____ 20____.

_____          Commission Expires: _____
Signature of Notary Public or Deputy Clerk

## CERTIFICATION (IF APPLICABLE)

I hereby certify this to be a true and correct copy of the original summons issued in this case.

_____
**CLERK & MASTER**

**For ADA assistance, please call ADA coordinator: 615-790-5428**



FILED
WILLIAMSON COUNTY
CLERK & MASTER
2018 DEC -3 PM 3:34

FILED FOR ENTRY

IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
21ST JUDICIAL DISTRICT, WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

THE LAMPO GROUP, LLC D/B/A )
RAMSEY SOLUTIONS, )
      )
     Plaintiff, )
      )   Case No. **47877 W**
v. )
      )
KEVIN HELMUT PAFFRATH, THE )
PAFFRATH ORGANIZATION, and )
MEETNDONE CORPORATION )
      )
     Defendants.

## VERIFIED COMPLAINT

The plaintiff, The Lampo Group, LLC d/b/a Ramsey Solutions, states for its Verified

Complaint against the defendants, Kevin Helmut Paffrath, The Paffrath Organization, and

MeetNDone Corporation, as follows:

### PARTIES, JURISDICTION, AND VENUE

1. The Lampo Group, LLC d/b/a Ramsey Solutions is a limited liability company

organized and existing under the laws of the State of Tennessee, with its principal place of business

in Tennessee.

2. Kevin Helmut Paffrath ("Paffrath") is an individual residing at 8219 Quartz Street,

Ventura, California 93004. Paffrath may be served with process by personal service at his

residence or wherever he may be found.

3. The Paffrath Organization is a corporation organized and existing under the laws

of the State of California, with its principal place of business in California. The Paffrath

Organization may be served with process by serving Paffrath, its registered agent, President, and

Chief Executive Officer, at 8219 Quartz Street, Ventura, California 93004.

DEFT./WITNESS COPY

1

4.     MeetNDone is a corporation organized and existing under the laws of the State of California, with its principal place of business in California. MeetNDone may be served with process by serving Paffrath, its registered agent and Chief Executive Officer, at 8219 Quartz Street, Ventura, California 93004.

5.     This Court has personal jurisdiction over the defendants pursuant to Tenn. Code Ann. §§ 20-2-201, -214, and -223 in that this action relates to the transaction had, in whole or in part, within this state, the causes of action arose in this state, defendants committed tortious acts or omissions within this state, entered into a contract for services to be rendered in this state, and the exercise of personal jurisdiction over the defendants comports with fair play and substantial justice. This Court also has personal jurisdiction over Paffrath because Paffrath contractually consented to the personal jurisdiction of this Court and has waived any objection to this Court as an inconvenient venue.

6.     This Court has subject matter jurisdiction over this action pursuant to Tenn. Code Ann. §§ 16-11-101, -102, -103, -115.

7.     Venue is proper in this court under Tenn. Code Ann. § 16-11-114, -115 and § 20-4-101, -104 in that Williamson County is the county where: (1) the causes of action arose; (2) the contract forming the basis of this action was executed; (3) services were rendered and were to be rendered; and/or (4) all or a substantial parts of the events or omissions giving rise to the cause of action accrued.

## FACTUAL BACKGROUND

### *Overview of Ramsey's Business*

8.     In 1992, Dave Ramsey founded The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey") to provide personal finance education, through various means, to people wanting a

2

better understanding of the principles of wise money management.

9. Mr. Ramsey is a recognized personal finance expert and a popular national radio personality.

10. Mr. Ramsey has authored seven best-selling books—*Financial Peace*, *More Than Enough*, *The Total Money Makeover*, *EntreLeadership*, *The Complete Guide to Money*, *Legacy Journey*, and *Smart Money Smart Kids*—and has sold more than ten million copies combined.

11. Mr. Ramsey is also the host of a nationally syndicated radio program, The Dave Ramsey Show®, which is heard by eleven million listeners each week on more than 550 radio stations and digitally through podcasts, online audio streaming, and a twenty-four hour online streaming video channel.

### *The Endorsed Local Providers Program*

12. In 2002, Ramsey created the Endorsed Local Providers ("ELP") program to connect consumers with industry experts in fields such as insurance, real estate, and tax services.

13. To be included in the ELP program, an ELP must earn Ramsey's recommendation through a track record of success and a commitment to exceptional customer service.

14. Every ELP who qualifies for the program represents and warrants that it provides and will continue to provide excellent client service and client satisfaction, which is of utmost importance to Ramsey.

15. Ramsey carefully vets each ELP applicant, and if admitted into the program, Ramsey holds each ELP accountable by frequent interaction with Ramsey's ELP team, including conference calls, emails, and other frequent interaction.

16. Real estate services is one of the types of ELP programs provided by Ramsey.

3

17.     In the real estate ELP program, a qualified real estate professional admitted to the program commits to provide excellent customer service and to abide by the terms of the ELP program.

18.     In exchange, Ramsey provides the real estate ELP with referral services within the ELP's local territory and generally promotes the real estate ELP program on the Dave Ramsey Show® and www.daveramsey.com.

19.     Additionally, once admitted into the real estate ELP program, Ramsey provides each ELP with access to Ramsey's password protected ELP HUB.

20.     Ramsey's ELP HUB contains confidential, proprietary, or other sensitive information, including marketing data and metrics not available to the public.

21.     Every ELP in Ramsey's real estate ELP program also agrees, represents, and warrants that it will, among other things:

>    (a)     Use best efforts to make telephone contact with any referral within 24 business hours;
>
>    (b)     Use best efforts to service small purchases, sales, or leases and shall not decline services due to any asset size or classification;
>
>    (c)     Use best efforts to maintain reasonable customer satisfaction with responsiveness in email, telephone, or other communication;
>
>    (d)     Use best efforts to respond to and resolve client complaints and concerns;
>
>    (e)     Maintain and satisfy all legal requirements of licensure and registration with all governing authorities, including any necessary and appropriate continuing legal education;
>
>    (f)     Maintain commercially reasonable measures to ensure confidentiality and protection of client personal data and to ensure that client data is used only in accordance with client consent;

4

(g)     Maintain open lines of communication and be available for regular calls with Lampo's team at least once per quarter;

(h)     Maintain a full-service real estate brokerage practice.

(i)     Will not use the terms "discount," "flat rate," "lower commission," or any other substantially similar term expressing or implying that the ELP offers lower commissions or fees than others in the market.

22.     Ramsey, however, does not begin referring consumers to a real estate ELP unless and until Ramsey is satisfied that the ELP is committed to the program and to providing excellent client service.

23.     Significantly, Ramsey may also remove any real estate ELP from the program at any time for any reason, including for an ELP's failure to maintain the level of service required by Ramsey.

24.     In exchange for providing top-notch customer service to consumers and Ramsey's ability to refer consumers to a real estate ELP, and as disclosed on Ramsey's website, an ELP pays a fee to Ramsey for participation in the program.

*Paffrath's Business*

25.     Paffrath is a self-described "No-Pressure Real Estate Agent" providing real estate services in Ventura and Santa Barbara, California.

26.     Paffrath is a licensed real estate broker in California (License ID 01893132).

27.     Paffrath provides real estate services through his affiliated licensed corporations, The Paffrath Organization and MeetNDone Corporation.

28.     Paffrath is the Chief Executive Officer, Secretary, and Chief Financial Officer of The Paffrath Organization.

5

29.   The Paffrath Organization is a licensed real estate corporation in California (License ID 02032575).

30.   Paffrath is also the Chief Executive Officer of MeetNDone Corporation.

31.   MeetNDone Corporation is a licensed real estate corporation in California (License ID 02031590).

32.   Paffrath, The Paffrath Corporation, and MeetNDone Corporation do business as "Meet Kevin" at www.meetkevin.com.

33.   At www.meetkevin.com, Paffrath alleges to have sold "over $80 million . . . in the last 4 years alone."

34.   Paffrath also alleges on his website that his "most important" personal qualities are "Trust, Honesty, and Integrity."

35.   Paffrath also advertises his real estate services on various social media platforms, including YouTube, FaceBook, Twitter, and Instagram.

36.   Paffrath also advertises for his online "personal course on real estate investing" taught by Paffrath at www.meetkevin.teachable.com.

37.   Paffrath charges $199 per student for participation in the self-proclaimed "Amazing, Interactive" online course.

***Paffrath Infiltrates the ELP Program, Receives Access to Ramsey's ELP HUB, Refuses to Participate in the Program, and is Terminated from the Program in Less Than One Month.***

38.   On or about May 31, 2018, Paffrath applied for admission into Ramsey's real estate ELP program.

39.   On or about September 6, 2018, Ramsey's ELP team interviewed Paffrath to discuss his application.

6

40.     On or about September 11, 2018, Ramsey's ELP team and Paffrath had a second call to further discuss the ELP program and the program's contractual requirements.

41.     On September 14, 2018, Paffrath executed the Real Estate ELP Agreement (the "Agreement").

42.     Upon receiving the signed Agreement, Ramsey sent Paffrath a welcome email identifying Paffrath's assigned Client Relationship Coach.

43.     Ramsey's welcome email also included Paffrath's login and password credentials to access Ramsey's ELP HUB containing Ramsey's confidential, proprietary, and other sensitive information.

44.     In connection with Paffrath's access to Ramsey's ELP HUB, the Agreement provided that Paffrath would not use or copy for his own benefit or the benefit of third parties any of Ramsey's confidential, proprietary, and other sensitive information, including but not limited to Ramsey's client lists, vendor lists, customer lists, ELP lists, business plans, computer programs, developing products, internal reports, marketing strategies, metrics, marketing data or other information not available to the general public, whether communicated in writing, electronically or orally.

45.     The Agreement also provided that Paffrath would not "make any public statement, press release or marketing material that uses [Ramsey's] name, likeness, brand, or any associated marks without [Ramsey's] express written permission []."

46.     The Agreement also required and Paffrath agreed, represented, and warranted that he would comply with all of Ramsey's quality standards and expectations for real estate ELPs in Ramsey's program.

47.     Notwithstanding Paffrath's obligations, Paffrath failed to comply with the terms of the Agreement.

48.     In furtherance of Ramsey's policy that it would not begin referring consumers to Paffrath unless and until Ramsey was satisfied that Paffrath was committed to the program and to providing excellent client service, Ramsey's ELP team scheduled calls between Paffrath and his assigned Client Relationship Coach.

49.     Paffrath, however, refused to meaningfully participate in the calls with his Client Relationship Coach.

50.     Paffrath also refused to commit to set aside one hour per month to communicate with Ramsey's ELP team.

51.     On October 8, 2018, Ramsey's ELP team emailed Paffrath to discuss Paffrath's refusal to meaningfully participate in the required conference calls.

52.     Paffrath, however, again refused to participate in the required conference calls until he had "an opportunity to start trying to interact with some referrals."

53.     In response to Paffrath's continued refusal to participate in the required conference calls, Ramsey's ELP team informed Paffrath that being a member of the ELP team requires an ELP "to be invested with the program right now and for the long haul" and that if Paffrath could not value the ELP relationship enough to regular communications every month, Ramsey would terminate the Agreement.

54.     Ultimately, Paffrath refused to participate in the required conference calls and on October 8, 2018, Ramsey terminated the Agreement and removed Paffrath from Ramsey's real estate ELP program, having referred him not a single client.

8

*Paffrath Demonstrates His Lack of "Trust, Honesty, and Integrity" Through His Various Breaches of the Agreement and Resulting Conduct.*

55.     Unbeknownst to Ramsey when it entered into the Agreement, Paffrath never intended to comply with his obligations in the Agreement.

56.     Instead, Paffrath fraudulently induced Ramsey into the Agreement as a ruse to infiltrate Ramsey's ELP program, steal Ramsey's confidential and proprietary information, and unlawfully compete with Ramsey by posting false and malicious statements about Ramsey's ELP program on the internet as clickbait so that Paffrath could increase page views and resulting business with Paffrath and his affiliated companies, The Paffrath Organization and MeetNDone.

57.     On November 19, 2018, approximately one month after being terminated from Ramsey's ELP program, Paffrath posted a video on YouTube called "Dave Ramsey: Exposed" (https://www.youtube.com/watch?v=cKvhoimzReM).

58.     As of the date of the filing of this Complaint, Paffrath's YouTube Channel has over 71,000 subscribers (https://www.youtube.com/user/KevinPaffrath/).

59.     As of the date of filing this Complaint, Paffrath's "Dave Ramsey: Exposed" video has over 100,000 views.

60.     In Paffrath's "Dave Ramsey: Exposed" video, Paffrath describes how he "infiltrated" Ramsey's ELP program.

61.     Paffrath, apparently recognizing the seriousness of his false and malicious claims, affirmatively states and acknowledges in the video he is "probably going to get sued for this [video]."

62.     Paffrath further admits in the video that he had no intention of serving the local territories assigned to him by Ramsey's ELP team. Specifically, Paffrath admitted that he gave numerous false zip codes to Ramsey's ELP team where Paffrath does not conduct business.

9

63.     Additionally, and while advertising for Paffrath's on-line real estate investment course (1:45), Paffrath also makes a number of false and malicious statements about Ramsey's real estate ELP program, including without limitation that:

> (a)     Ramsey requires the real estate ELPs to: "1. Always be closing… 2. Because if you don't, we'll kick you out; 3. Pay me my fees 4. That's financial peace for me, b*tch!" (1:40);
>
> (b)     The vetting process and fee structure is one big sales pitch (3:40);
>
> (c)     Ramsey provides "cold as ice leads" to ELP's who aren't prequalified (4:11);
>
> (d)     Ramsey receives a fee from each ELP for "doing nothing" (4:50);
>
> (e)     Ramsey "fluffs the numbers" of his ELP program (8:51);
>
> (f)     Customers receive "21 calls in 1 week" with "no qualification" and that the ELP program is simply a "handoff service" (9:21); and
>
> (g)     Ramsey's ELP program does "ZERO Vetting," is "High-Pressure," has "Dismal Success Rates," and is a "Profit-Driven Sham" (9:44).

64.     By posting the video, Paffrath also breached numerous provisions of the Agreement with Ramsey.

65.     As referenced above, the Agreement provided that Paffrath would not use or copy for his own benefit or the benefit of third parties any of Ramsey's confidential, proprietary, and other sensitive information, including but not limited to Ramsey's client lists, vendor lists, customer lists, ELP lists, business plans, computer programs, developing products, internal

10

reports, marketing strategies, metrics, marketing data or other information not available to the general public, whether communicated in writing, electronically or orally.

66.     In violation of the Agreement, Paffrath disclosed Ramsey's confidential and proprietary data, including the fees associated with the program as well as screenshots of Ramsey's ELP HUB with confidential metrics and marketing data from the ELB HUB (5:40).

67.     Paffrath also violated the Agreement's confidentiality provision by using Ramsey's information for Paffrath's benefit and to the benefit of Paffrath's affiliated entities, The Paffrath Organization and MeetNDone Corporation.

68.     Paffrath also violated Section 4 of the Agreement with his YouTube video (as well as other YouTube videos, including additional videos posted on September 15, 2018, October 22, 2018, November 21, 2018, November 24, 2018, and November 26, 2018), which obligated Paffrath not to "make any public statement, press release or marketing material that uses [Ramsey's] name, likeness, brand, or any associated marks without [Ramsey's] express written permission []."

69.     Even after posting the video on YouTube, Paffrath continued his malicious, false, and unlawful conduct in posting numerous comments to various users on Paffrath's YouTube channel.

70.     For example, Paffrath maliciously and falsely stated that Ramsey does not disclose the fees he receives from the ELP members.

71.     Paffrath also maliciously and falsely alleged that Ramsey does not disclose "his kickbacks" and takes "advantage" of "legal loopholes that don't require him to."

72.     These statements are, of course, false because Ramsey affirmative discloses it receives a fee from an ELP on Ramsey's website.

11

73. Paffrath also maliciously and falsely stated that Ramsey does not "vet" the ELPs.

74. This statement is also false as Ramsey carefully vets the providers in Ramsey's ELP program.

75. In fact, Ramsey's vetting process was specifically demonstrated in this case in that Paffrath never received a referral while in the program given Paffrath's unwillingness to comply with the Agreement and Ramsey's quality standards set forth therein.

### *Paffrath Doubles Down on His Malicious and Unlawful Conduct.*

76. On November 21, 2018, Ramsey, through counsel, sent a cease and desist letter demanding that Paffrath immediately remove the unlawful video from YouTube and to cease all use of the confidential information that Paffrath unlawfully obtained from Ramsey.

77. Within hours of receiving Ramsey's demand letter, Paffrath took to social media, posting yet another YouTube video called "dave Ramsey is suing me . . ." (www.youtube.com/watch?v=2kVshWp9pbk).

78. Paffrath confirmed on the video that he created it to "respond to the demand letter" (4:20).

79. As of the date of filing this Complaint, Paffrath's "dave Ramsey is suing me . . ." video has over 110,000 views.

80. Paffrath's November 21 video mocks Ramsey's demand letter and conclusively demonstrates Paffrath's continued malicious intent of violating the law through his anti-competitive business strategies.

81. For example, Paffrath falsely states that Ramsey is "deceiving the public" through Ramsey's ELP program, that Ramsey is trying to "conceal information" and "ruin small businesses and keep people in the dark" (1:35, 4:20).

12

82.     Less than three days after Paffrath posted his second malicious YouTube video, on November 24, 2018, Paffrath posted yet a third video on YouTube called "A Message for Dave Ramsey . . ." (www.youtube.com/watch?v=XOG2xVhZ280).

83.     As of the date of filing this Complaint, Paffrath's "A Message for Dave Ramsey . . ." video has over 71,000 views.

84.     Paffrath's November 24 video not only further disparages Ramsey but uses Ramsey as clickbait to advertise Paffrath's "real estate investing course" for a "Black Friday" sale (1:10).

85.     Paffrath's November 24 video continues his malicious and false assault upon Ramsey, mocking Mr. Ramsey, using Mr. Ramsey's likeness stating Ramsey "hides behind loophole laws" and "doesn't actually really vet anybody" for the ELP program (:30).

86.     Paffrath further maliciously and falsely alleges that Ramsey does not disclose "actual kickbacks" to consumers (5:31).

87.     Paffrath also maliciously and falsely posts comments to the video that Ramsey "hide[s] the fact that he collects massive referral fees from the recommendations," and "claims to vet vendors, yet vets neither the referrals nor the vendors."

88.     As a result of the foregoing conduct, Ramsey seeks relief in this Court to immediately stop Paffrath's malicious, false, unlawful, and anti-competitive campaign against Ramsey as well as to stop Paffrath's continued dissemination of Ramsey's confidential and proprietary information in violation of the Agreement and Tennessee law.

## COUNT I – BREACH OF CONTRACT

89.     Ramsey incorporates the numbered paragraphs above as if fully set forth herein.

90.     Ramsey and Paffrath entered into the Agreement, which required Paffrath to comply with its terms.

91. Ramsey, at all times, performed its obligations under the Agreement.

92. However, Paffrath breached the Agreement in numerous ways as described above, including without limitation making public statements and marketing material improperly using Ramsey's name, likeness, brand, and associated marks without permission; failing to comply with Ramsey's quality standards for ELP providers as set forth in the Agreement; and by unlawfully disclosing Ramsey's confidential, proprietary, and other sensitive information.

93. As a result of Paffrath's breaches of the Agreement, Ramsey has suffered damages in an amount to be determined at trial.

94. Pursuant to Section 12 of the Agreement, Ramsey is entitled to recover from Paffrath all attorney's fees incurred as well as all costs of suit and preparation thereof.

## COUNT II – FRAUD/CONSTRUCTIVE FRAUD/FRAUDULENT INDUCEMENT

95. Ramsey incorporates the numbered paragraphs above as if fully set forth herein.

96. Paffrath represented to Ramsey that Paffrath would provide truthful and accurate information in connection with the ELP program and would comply with the terms and conditions of the Agreement and program. Paffrath intended to induce reliance on Paffrath's representations and Ramsey reasonably relied upon the information supplied by Paffrath.

97. Paffrath, however, supplied Ramsey with false information, including without limitation a false list of zip codes Paffrath allegedly served, in connection with his ELP application.

98. Additionally, while Paffrath also represented he would abide by the terms of the ELP program, Paffrath clearly had no intentions of doing so when he entered into the Agreement.

99. Rather, Paffrath entered into the Agreement as a ruse to gain access to Ramsey's confidential, proprietary, and sensitive business information to benefit himself and to benefit his affiliated companies, The Paffrath Corporation and MeetNDone Corporation.

14

111. As a result, Ramsey has suffered damages in an amount to be determined at trial.

## COUNT V – BUSINESS DISPARAGEMENT

112. Ramsey incorporates the numbered paragraphs above as if fully set forth herein.

113. As described above, Paffrath published multiple false statements harmful to Ramsey's business interests.

114. Paffrath intended that publication of the statements would result in harming Ramsey's financial business interests, or alternatively, recognized or should have recognized that the statements were likely to do so.

115. When Paffrath made the statements as described above, Paffrath knew that his statements were false or acted in reckless disregard of the truth or falsity of them.

116. As a result, Ramsey has suffered damages in an amount to be determined at trial.

## COUNT VI – TENNESSEE UNIFORM TRADE SECRETS ACT

117. Ramsey incorporates the numbered paragraphs above as if fully set forth herein.

118. Ramsey considers the information provided to Paffrath through the ELP HUB as confidential, proprietary, sensitive business information, and trade secrets ("Trade Secrets").

119. Ramsey's Trade Secrets derive independent economic value, are not generally known to and not readily ascertainable by proper means to other persons who can obtain economic value from their disclosure or use.

120. Ramsey takes reasonable efforts to maintain the secrecy of its Trade Secrets.

121. Paffrath acquired Ramsey's Trade Secrets by using improper means by fraudulently infiltrating Ramsey's ELP program.

122. Paffrath misappropriated Ramsey's Trade Secrets by disclosing them on YouTube and to Paffrath's affiliates, including The Paffrath Organization and MeetNDone Corporation, without express or implied consent by Ramsey.

123. At the time of the disclosure by Paffrath, Paffrath knew or had reason to know that its knowledge of Ramsey's Trade Secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or to limit its use.

124. Pursuant to Tenn. Code Ann. § 47-25-1704, Ramsey seeks actual loss, unjust enrichment, and/or reasonable royalty damages caused by Paffrath's misappropriation of Ramsey's Trade Secrets in an amount to be determined at trial.

125. Because Paffrath's misappropriation of Ramsey's Trade Secrets was willful and malicious, Ramsey also seeks exemplary damages and attorneys' fees, the precise amount to be determined at trial.

## COUNT VII – UNFAIR COMPETITION

126. Ramsey incorporates the numbered paragraphs above as if fully set forth herein.

127. Paffrath's malicious conduct as described above constitutes unfair competition.

128. Specifically, the YouTube videos are malicious, false, and misleading regarding Ramsey's real estate ELP program, and the statements made therein have actually deceived or designed to tend to deceive the public's purchasing decisions.

129. Paffrath has engaged in this false, misleading, and deceptive advertising in this regard in an effort to promote Paffrath's and his affiliates commercial business and real estate services, including without limitation Paffrath's, The Paffrath Organization's, and MeetNDone Corporation's online real estate investment course.

130. As a result, Paffrath, The Paffrath Organization, and MeetNDone Corporation are liable to Ramsey for unfair competition in an amount to be determined at trial.

## REQUEST FOR A TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNTION

131. Ramsey incorporates the numbered paragraphs above as if fully set forth herein.

132. Ramsey requests that the Court enter a temporary restraining order, a temporary injunction, and a permanent injunction.

133. Specifically, Ramsey requests this Court require Paffrath to remove each of the YouTube videos referenced above due to their false, deceptive, and malicious nature and for disclosing Ramsey's Trade Secrets.

134. Ramsey further requests that the Court prohibit Paffrath or anyone acting in concert with Paffrath from posting any further content online that is false, deceptive, and malicious regarding Ramsey or that discloses Ramsey's Trade Secrets.

135. Ramsey further requests that the Court require Paffrath and anyone acting in concert with him to immediately return Ramsey's Trade Secrets to Ramsey.

## PRAYER FOR RELIEF

Ramsey respectfully requests that the Court:

A. Enter a restraining order, temporary, and permanent injunction ordering Paffrath, his agents, attorneys, and all persons in active concert or participation with them (1) to remove each of the YouTube videos referenced above due to their false, deceptive, and malicious nature and for disclosing Ramsey's Trade Secrets; (2) prohibit Paffrath or anyone acting in concert with Paffrath from posting any further content online that is false, deceptive, and malicious regarding Ramsey or that discloses Ramsey's Trade Secrets; and (3) Ramsey further requests that the Court require Paffrath and anyone acting in concert with him to return Ramsey's Trade Secrets;

B.      Enter an order allowing Ramsey expedited discovery for the purpose of identifying and securing further evidence of Paffrath's unlawful activities;

C.      Enter a judgment awarding Ramsey (a) compensatory damages, punitive damages, prejudgment interest and post-judgment interest; (b) attorneys' fees, costs and expenses incurred herein; and (c) such other and further relief as this Court deems just, proper and equitable; and

D.      Award such other and further relief as this Court deems just, proper and equitable.

THIS IS THE PLAINTIFF'S FIRST REQUEST FOR INJUNCTIVE RELIEF.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

By: _R. Brandon Bundren_____
E. Todd Presnell (#17521)
R. Brandon Bundren (#30985)
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Tel: 615.244.2582
Fax: 615.252.6380
Email: tpresnell@bradley.com
Email: bbundren@bradley.com

*Attorneys for Plaintiff, The Lampo Group, LLC*
*d/b/a Ramsey Solutions*

## VERIFICATION

STATE OF TENNESSEE       )
COUNTY OF WILLIAMSON     )

     I, Jack Galloway, being duly sworn, make oath and verify that I am an Executive Vice President of The Lampo Group, LLC d/b/a Ramsey Solutions, the plaintiff in this action, that I have read the foregoing Verified Complaint and have personal knowledge of the factual allegations set forth therein unless otherwise indicated and that the same are true and correct to the best of my knowledge.

                         Jack Galloway, Executive Vice President
                         The Lampo Group, LLC d/b/a Ramsey Solutions

Sworn to and subscribed before me on the 3rd day of December, 2018.

Notary Public: _____

My Commission Expires: _March 28, 2020_

PATTI HARRIS
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF WILLIAMSON

My Comm. Expires
March 28. 2020