# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC D/B/A RAMSEY SOLUTIONS, § § § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | Case No.: 3:18-cv-01402 | |
| § | | |
| KEVIN HELMUT PAFFRATH, THE PAFFRATH ORGANIZATION, and MEETNDONE CORPORATION, § § § | District Judge Eli J. Richardson | |
| § | Magistrate Judge Barbara D. Holmes | |
| *Defendants.* § § | | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE VIDEOS UNDER SEAL

Come now the Defendants, through counsel, and respectfully respond in opposition to the Plaintiff's and David L. Ramsey, III's Motion to Quash and For Protective Order. For the reasons that follow, the motion should be denied.

### I. Facts

In 2018, the Plaintiff initiated this action regarding a series of YouTube videos mocking David L. Ramsey, III, a public figure and celebrity who founded the Plaintiff and is currently both an employee and agent of the Plaintiff. *See* Doc. #1-2. The Plaintiff's Complaint contains an entire fact section devoted to Mr. Ramsey. *See* Doc. #41-1, pp. 2-3. It is also expressly premised upon allegations about Mr. Ramsey, including allegations about Mr. Paffrath "mocking Mr. Ramsey, using Mr. Ramsey's likeness," and "stating Ramsey 'hides behind loophole laws' and 'doesn't actually really vet anybody' for the ELP program[.]" *Id.* at p. 13, ¶ 85.

-1-

To defend against the Plaintiff's allegations, the Defendants have sought for months to take Mr. Ramsey's deposition in order to discover facts regarding them. The Plaintiff refused to provide Mr. Ramsey for a deposition, resulting in the Defendants sending a detailed letter to counsel setting forth their need for Mr. Ramsey's testimony and indicating what specific stipulations would be necessary from the Plaintiff in order to relinquish their right to depose him. *See* **Exhibit #1**. None of those concerns were addressed, however, and the Defendants' offered stipulations were rejected.

## II. Argument

A. <u>Mr. Ramsey's claim that he has no personal knowledge of any facts involved in this litigation is false.</u>

As grounds for resisting a deposition, Mr. Ramsey has sworn under oath that "I have no personal knowledge of any facts involved in this litigation." Doc. #77-2, p. 4, ¶ 9. There is simply no way that this representation is accurate. As noted, for instance, the Plaintiff's Complaint includes <u>an entire fact section</u> devoted to Mr. Ramsey himself that reads as follows:

FACTUAL BACKGROUND

***Overview of Ramsey's Business***

8. In 1992, Dave Ramsey founded The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey") to provide personal finance education, through various means, to people wanting a better understanding of the principles of wise money management.

9. Mr. Ramsey is a recognized personal finance expert and a popular national radio personality.

10. Mr. Ramsey has authored seven best-selling books-Financial Peace, More Than Enough, The Total Money Makeover, EntreLeadership, The Complete Guide to Money, Legacy Journey, and Smart Money Smart Kids- and has sold more than ten million copies combined.

11. Mr. Ramsey is also the host of a nationally syndicated radio program,

> The Dave Ramsey Show®, which is heard by eleven million listeners each week on more than 550 radio stations and digitally through podcasts, online audio streaming, and a twenty-four hour online streaming video channel.
>
> ### ***The Endorsed Local Providers Program***
>
> 12. In 2002, Ramsey created the Endorsed Local Providers ("ELP") program to connect consumers with industry experts in fields such as insurance, real estate, and tax services.
>
> 13. To be included in the ELP program, an ELP must earn Ramsey's recommendation through a track record of success and a commitment to exceptional customer service.
>
> 14. Every ELP who qualifies for the program represents and warrants that it provides and will continue to provide excellent client service and client satisfaction, which is of utmost importance to Ramsey.
>
> 15. Ramsey carefully vets each ELP applicant, and if admitted into the program, Ramsey holds each ELP accountable by frequent interaction with Ramsey's ELP team, including conference calls, emails, and other frequent interaction.
>
> 16. Real estate services is one of the types of ELP programs provided by Ramsey.

Doc. #41-1, pp. 2-3.

Further, the assertion is belied by Mr. Ramsey's own declaration, which indicates that he does indeed have information "about the background and allegations of this litigation . . . provided to me either by RS's legal counsel or at RS's legal counsel's direction." *See* Doc. #77-2, p. 4, ¶ 9. Thus, because Mr. Ramsey plainly has—by his own admission—received information regarding this lawsuit, to the extent that he claims the information is privileged, then he should furnish a privilege log regarding all communications and correspondence that he has received or sent relating to this matter. *See* Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the

-3-

documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). *See also Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, No. 3:18-0447, 2018 WL 7283275, at *2 (M.D. Tenn. July 13, 2018) ("The Court is of the opinion that a privilege log is contemplated, if not expressly required, by Fed. R. Civ. P. 26(b)(5)."); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5867268, at *5 (W.D. Tenn. Oct. 5, 2016) ("This court has previously held that to comply with Rule 26, the privilege log should contain the date and time of the document, the type of communication, the author, the addressee(s), identification of the recipients, the privilege asserted, and an explanation of the privilege claimed.").

B.   The subpoena is entirely proper.

The Plaintiff insists that Defendants' "noticing and serving a subpoena for the deposition of the Plaintiff's CEO and Chairman, Dave Ramsey," represents nothing but "harassing action." Doc. #78, p. 1. This bad-faith assertion is transparently false, and knowingly so. As the Plaintiff and its counsel are well aware, in previous correspondence, they have forthrightly acknowledged Mr. Ramsey's own direct and intimate personal involvement in this litigation, which Defendants have previously called to Plaintiff's attention regarding the need for the sought deposition:

> Further, as you may recall, during a call that took place on March 7, 2019, you indicated that your client's primary interest in this litigation was ensuring that there would not be any more social media "hit pieces" about Mr. Ramsey going forward. Further still, Matt Blackburn, Ramsey Solutions' General Counsel, indicated to Mr. Paffrath that Mr. Ramsey had demanded this litigation because he spent his life building Ramsey Solutions, because his family works there, and because he was upset that Mr. Paffrath had indicated that his business was a "sham" in a series of

videos that Mr. Ramsey took as a "total assault on who he is as a person." In other words: This litigation is very clearly being driven by Mr. Ramsey himself—who is directly involved in it and whose reputation has been placed at issue—and Ramsey Solutions' own Verified Complaint in this matter expressly reflects as much, given that it has sued my clients because of YouTube videos "mocking Mr. Ramsey." *See* Doc. 41-1, Plaintiff's Verified Complaint, PageID # 555.[1]

*See* **Exhibit A**, p. 2. Whether the Plaintiff and its counsel misrepresented Mr. Ramsey's personal involvement then—when it had no reason to do so and nothing to gain—or now, when it seeks the benefit of a protective order to prevent the aggrieved celebrity behind this litigation from being deposed regarding it, is something that only the Plaintiff can explain.

Furthermore, the Defendants' theory of the case—that the Plaintiff has not maintained this action for any legitimate reasons or because it was actually harmed, but, instead, because its celebrity namesake cannot abide being mocked online—is well-supported:

<u>First</u>, Dave Ramsey's public history of irrational, bizarre, and wildly disproportionate responses to social media criticism are well-documented. *See, e.g.*, Matthew Paul Turner, *Spies, Cash, and Fear: Inside Christian Money Guru Dave Ramsey's Social Media Witch Hunt: When critics appeared online, employees say evangelical financial whiz Dave Ramsey went ballistic, allegedly firing innocent employees and offering bounties for information*, THE DAILY BEAST (May 29, 2014), *available at* https://www.thedailybeast.com/spies-cash-and-fear-inside-christian-money-guru-dave-ramseys-social-media-witch-hunt (**Exhibit #2**).

---

[1] The Defendants do not seek the admission of these statements at trial. *See* Fed. R. Evid. 408. They are referenced, instead, "for another purpose"—to demonstrate that the Plaintiff's new position that Mr. Ramsey has nothing to do with this litigation and that any subpoena regarding him is "harassing" cannot even remotely be maintained in good faith. *See* Fed. R. Evid. 408(b).

*Second*, the Plaintiff has maintained—and continues to maintain—this baseless SLAPP-suit despite having admitted in verified interrogatories that it has suffered no known harm of any kind regarding the YouTube videos mocking Mr. Ramsey upon which nearly this entire action is premised. *See* Doc. #80-1, p. 3 (Interrogatory #1). Instead, the only "lost business" of any kind that the Plaintiff claims to have suffered is the premature termination of Mr. Paffrath's contract, which the Plaintiff itself was responsible for terminating unilaterally. *See* id. at pp. 3-4 (Interrogatory #2).

C. The Defendants have offered not to depose Mr. Ramsey in exchange for appropriate stipulations.

Further evidencing that the Defendants have no interest in "harassing" Mr. Ramsey as claimed, the Defendants have also offered not to depose Mr. Ramsey—a witness that Plaintiff has sought to maintain the right to call in rebuttal at trial—in exchange for appropriate stipulations. Specifically, as Defendants indicated by letter:

> [I]n an effort to accommodate your request and enable your client to avoid producing Mr. Ramsey for a deposition that my clients are entitled to take and which is essential to this litigation, my clients will waive their right to depose Mr. Ramsey if the Plaintiff will agree to do all of the following:
>
> 1. Represent, in writing, that Dave Ramsey has no personal knowledge of any of the facts alleged in the Plaintiff's Verified Complaint;
>
> 2. Stipulate that it was not harmed by any statement that any Defendant made regarding Dave Ramsey;
>
> 3. Stipulate that it does not allege that it was harmed by any statement that any Defendant made regarding Dave Ramsey;
>
> 4. Stipulate that the Defendants did not breach any legal or contractual duty to the Plaintiff by making any statement regarding Dave Ramsey;
>
> 5. Stipulate that it does not allege that Defendants breached any legal or contractual duty to the Plaintiff by making any statement regarding Dave Ramsey;

6. Stipulate that Dave Ramsey does not dispute the truth or substantial truth of any statement made by any Defendant regarding him; and

7. Stipulate that Dave Ramsey's testimony regarding any matter relevant to the Plaintiff's Verified Complaint about which the Defendant can demonstrate Mr. Ramsey has personal knowledge would be adverse to the Plaintiff.

*See* **Exhibit #1**, pp. 3-4.

Mr. Ramsey's deposition is required because the Plaintiff declined to agree to any of these stipulations. Under the circumstances of this case, and given Mr. Ramsey's importance to it, they are also perfectly reasonable in light of the Plaintiff's refusal to make an appropriate fact witness with demonstrable knowledge of the Plaintiff's allegations available for deposition.

### III. Conclusion

For the foregoing reasons, the Plaintiff's and Mr. Ramsey's motion to quash and for a protective order should be **DENIED**.

Respectfully submitted,

By: /s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
1803 Broadway, Suite #531
Nashville, TN 37203
daniel.a.horwitz@gmail.com
(615) 739-2888

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of October, 2019, a copy of the foregoing was sent via CM/ECF, and to the following parties:

E. Todd Presnell
Brandon Bundren
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
tpresnell@bradley.com
bbundren@bradley.com

*Counsel for Plaintiff the Lampo Group, LLC d/b/a Ramsey Solutions*

                                                  By:    /s/ Daniel A. Horwitz
                                                            Daniel A. Horwitz, Esq.

-8-

Case 3:18-cv-01402   Document 84   Filed 10/26/19   Page 8 of 8 PageID #: 991