# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC D/B/A RAMSEY SOLUTIONS, § § § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | Case No.: 3:18-cv-01402 | |
| § | | |
| KEVIN HELMUT PAFFRATH, THE § PAFFRATH ORGANIZATION, and § MEETNDONE CORPORATION, § § | District Judge Eli J. Richardson Magistrate Judge Barbara D. Holmes | |
| *Defendants.* § | | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO ALTER OR AMEND NOVEMBER 1, 2019 ORDER

### I. FACTS & PROCEDURAL HISTORY

On October 10, 2019, the Defendants issued a subpoena to take the deposition of David Lawrence Ramsey III. *See* Doc. #77-1. Thereafter, Mr. Ramsey filed a sworn declaration in support of his motion for a protective order and motion to quash Defendants' subpoena. *See* Doc. #77-2. Mr. Ramsey's declaration contended, among other things, that:

> **I have no personal knowledge of any facts involved in this litigation.** I have never had any personal dealings with the defendants, nor have I ever corresponded with defendants by email or otherwise. **The only information I possess about the background and allegations of this litigation is summary information provided to me either by RS's legal counsel or at RS's legal counsel's direction**.

*See* Doc. #77-2, p. 4, ¶ 9 (emphases added).

On November 1, 2019, this Court issued the following Order on Mr. Ramsey's

-1-

motion:

> Mr. Ramsey is granted a protective order from giving at a deposition at this time. However, if Mr. Ramsey's representations concerning the extent of his knowledge about the facts and circumstances of this dispute are ultimately inaccurate, Defendants can raise that matter at an appropriate time with the Court, which has the authority to fashion an appropriate remedy.

Doc. #91, p. 1. This Court further instructed that: "Nothing precludes Defendants from inquiring of any deponents what role, if any, Mr. Ramsey played or communications they had with him about the events that resulted in this litigation, and, as discussed, bringing any inaccuracies in Mr. Ramsey's representation to the attention of the Court." *Id*. at p. 5.

## II. TESTIMONY OF JACK GALLOWAY

After Mr. Ramsey declared, under oath, that he had "no personal knowledge of any facts involved in this litigation[,]" Doc. #77-2, p. 4, ¶ 9, and after Mr. Ramsey further declared, under oath, that "[t]he only information I possess about the background and allegations of this litigation is summary information provided to me either by RS's legal counsel or at RS's legal counsel's direction[,]" *id*., the very first witness that Defendants deposed in this matter—Mr. Jack Galloway—repeatedly and extensively testified otherwise. *See* **Exhibit #1**, Galloway Deposition Transcript.

To begin, after being asked point-blank whether Mr. Ramsey is "familiar with the allegations in [the Plaintiff's] Complaint," Mr. Galloway indicated without qualification that he is. *See id*. at p. 22, line 22–p. 23, line 1 ("Q. Is it fair to say that Dave Ramsey is familiar with the allegations in this complaint? MR. BUNDREN: Objection to the form, foundation, speculation. THE WITNESS: Yes.").

Mr. Galloway additionally testified that he had personally had conversations with

-2-

Case 3:18-cv-01402 Document 99 Filed 11/07/19 Page 2 of 8 PageID #: 1387

Dave Ramsey about this litigation, *see id*. at p. 113, lines 8–19; *see also id*. at p. 115, lines 7–22, including a ten-minute conversation with Mr. Ramsey without counsel present as recently as a week before Mr. Galloway was deposed, *id*. at p. 114, lines 8–11; *id*. at p. 114, line 25–p. 115, line 16; *id*. at p. 116, lines 1–7. Mr. Galloway also testified that this litigation was filed following "a group decision by our executive leadership of which Dave is the CEO." *Id*. at p. 21, lines 16–17. Indeed, Mr. Galloway testified that Mr. Ramsey was among just three people, one of whom is no longer employed by the Plaintiff, who made the decision to initiate this litigation in the first place. *See id*. at lines 23–25 ("[T]he decision would have been between Dave, myself, our general counsel."). Mr. Galloway also testified that he had corresponded with Dave Ramsey by email about this litigation prior to verifying the Plaintiff's Complaint. *See id*. at p. 22, lines 17–21 ("Q. Who did you talk to at Lampo before verifying the complaint? A. General counsel. To my knowledge, communication was done via e-mail with general counsel, myself, and Dave Ramsey.").

Further still, Mr. Galloway testified that Mr. Ramsey has details about specific, disputed allegations in this litigation. For example, Mr. Galloway testified that Mr. Ramsey has personal knowledge about the referral fee arrangement set forth in the Parties' contract—*see id*. at p. 69, lines 5–10 ("Q. Does Dave Ramsey know anything about the referral fee arrangement that is reflected in this agreement? MR. BUNDREN: Objection to the form, speculation, lack of foundation. THE WITNESS: Yes.")—an issue upon which a significant portion of this litigation is based. Notably, Mr. Ramsey is also personally listed on the Parties' contract in this matter. *See* Doc. #25-1, p. 1 ("Managing Broker: David L. Ramsey Broker License Number: 00200798 Firm License Number: 00221042"). Mr. Galloway further made clear that Mr. Ramsey was personally involved in, and plainly aware of, certain publicly reported, reputation-tarnishing incidents that

-3-

are relevant to the Plaintiff's claim of damages, including, for example, the fact that Mr. Ramsey had wielded a gun during a staff meeting to "teach a lesson about gossip." *See id*. at p. 18, line 22–p. 19, line 4 ("Q. Has Dave Ramsey ever pulled a gun out of a bag to try to teach a lesson about gossip? . . . . THE WITNESS: Yes.").

Mr. Galloway further testified that: "Dave would be familiar with any cease and desist we had sent[,]" *id*. at p. 10, lines 16–17—a topic that is also directly relevant to this litigation and which resulted in one of the videos that the Plaintiff has sued over, *see* Doc. #92, Amended Complaint, p. 12, ¶¶ 76–78 ("On November 21, 2018, Ramsey, through counsel, sent a cease and desist letter demanding that Paffrath immediately remove the unlawful video from YouTube and to cease all use of the confidential information that Paffrath unlawfully obtained from Ramsey. [] Within hours of receiving Ramsey's demand letter, Paffrath took to social media, posting yet another YouTube video called 'dave Ramsey is suing me . . .' (www.youtube.com/watch?v=2kVshWp9pbk). [] Paffrath confirmed on the video that he created it to 'respond to the demand letter.'"). Indeed, Mr. Ramsey is apparently the <u>only</u> current employee of the Plaintiff who has knowledge of the Plaintiff's cease and desist letters, because Matt Blackburn, the Plaintiff's former general counsel, "is no longer employed by the company." **Exhibit #1**, p. 10, lines 8–17. Because, among other things, the Defendants need to determine whether the Plaintiff undertook reasonable efforts to maintain the secrecy of its claimed "confidential" information after at least one of the Plaintiff's other ELP agents posted it online, *see* Doc. #40-2, p. 2, being able to depose a fact witness with personal knowledge of the Plaintiff's cease and desist letters is critical.

Moreover, even beyond Mr. Galloway's extensive admissions regarding Dave Ramsey's personal knowledge of—and personal involvement in—this litigation, there is

reason to believe that Mr. Galloway either was not entirely forthcoming about his communications with Mr. Ramsey regarding this litigation or else could not recall material matters accurately. *See, e.g.*, *id*. at p. 21, line 20 ("My recollection of it is poor."). For example, Mr. Galloway described a very recent, ten-minute conversation with Mr. Ramsey regarding this litigation at which Mr. Galloway purportedly just "discussed with him my preparation time and discussions with my attorneys" and claimed that Mr. Ramsey did not ask a single question. *Id*. at p. 115, line 24–p. 116, line 24. Mr. Galloway could not recall the date of the conversation, even though it had occurred the week prior. *Id*. at p. 116, line 25–p. 117, line 3. Mr. Galloway also initially characterized his conversation with Mr. Ramsey as being a "one-to-one" conversation, *id*. at p. 114, lines 8–11, but he then testified that a third individual who was not an attorney was actually present for it, *id*. at p. 115, lines 4–10. Mr. Galloway also recalled other meetings about this litigation involving at least Mr. Ramsey and Plaintiff's counsel, although he could not recall who else may have been present. *Id*. at p. 21, line 20–p. 22, line 2 ("It's possible there were other people in that conversation but I don't have memory of who they would be.").

Notably, Mr. Galloway's memory and truthfulness are critical issues in this litigation. Given that Mr. Galloway was the individual who verified the Plaintiff's Complaint based on his supposed "personal knowledge" of the Plaintiff's allegations, *see* Doc. #41-1, Verified Complaint, p. 20—a verification that enabled the Plaintiff to secure an *ex parte* Temporary Restraining Order restraining the Defendants' constitutionally protected speech, Doc. #1-5—and given Mr. Galloway's admittedly loose definition of "personal knowledge," *see* **Exhibit #1**, p. 17, lines 7–9 ("Personal knowledge means I was personally involved or had firsthand <u>or secondhand knowledge</u>.") (emphasis added), Mr.

-5-

Ramsey's ability to speak to both Mr. Galloway's credibility and the accuracy of his claimed knowledge of—and recollections regarding—this matter are similarly appropriate and critical areas of inquiry.

### III. ARGUMENT

"[T]he Federal Rules of Civil Procedure allow discovery that 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 481 (6th Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(1)). Under this standard, barring a demonstrable showing of burden or oppression, a party "should not be denied access to information necessary to establish [its] claim . . . ." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Given his personal knowledge of and direct involvement in this matter, Mr. Ramsey's deposition should be permitted. The Plaintiff—at least in part at the direction of Mr. Ramsey, who Mr. Galloway testified repeatedly has been involved in this litigation from its inception—has initiated extremely serious litigation against the Defendants. Since that time, the merits of the Plaintiff's claims of liability—not to mention the Plaintiff's utterly absent damages, *see* **Exhibit #1,** p. 24, line 18–p. 27, line 16 (indicating absence of any lost customers, clients, or other agents); *see also id.* at p. 117, line 13—p. 118, line 1 (indicating that Plaintiff's tax returns and revenue statements would not demonstrate any harm)—have proven to be remarkably thin. *See also* Doc. #97-1, Plaintiff's Responses & Objections to Defendant's First Set of Interrogatories & Requests for Production of Documents, pp. 3–4. To date, the Plaintiff has also resisted responding in any meaningful way to virtually all of the Defendants' written discovery requests, *see id.*, forcing the Defendants to rely substantially on deposition testimony for discovery that

is essential to the Plaintiff's claims and the Defendants' defenses. Consequently, given that Mr. Ramsey has demonstrable personal knowledge of many matters relevant to this litigation, his deposition should be permitted.

Put simply: A well-heeled celebrity litigant with a documented history of bizarre and wildly disproportionate censorship efforts has initiated and continues to maintain costly and highly questionable litigation against an individual who mocked him online. To defend against the Plaintiff's claims, the Defendants both need and are entitled to take Mr. Ramsey's deposition testimony in order to discover relevant evidence regarding the Plaintiff's allegations. Further, the fact that Mr. Ramsey has materially misrepresented his actual knowledge of—and direct personal involvement in—this litigation in order to prevent being deposed regarding it is not an appropriate basis for a protective order.

## IV.  CONCLUSION

For the foregoing reasons, this Court's November 1, 2019, Order should be altered and amended, and the Defendants should be permitted to depose Mr. Ramsey regarding his knowledge of this matter.

By:  /s/ Daniel A. Horwitz
Daniel A. Horwitz, BPR #032176
1803 Broadway, Suite #531
Nashville, TN  37203
daniel.a.horwitz@gmail.com
(615) 739-2888

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November, 2019, a copy of the foregoing was sent via CM/ECF, and to the following parties:

E. Todd Presnell
Brandon Bundren
Thor Urness
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
tpresnell@bradley.com
turness@bradley.com
bbundren@bradley.com

*Counsel for Plaintiff the Lampo Group, LLC d/b/a Ramsey Solutions and David Lawrence Ramsey III*

By: /s/ Daniel A. Horwitz
     Daniel A. Horwitz, Esq.